Taut, C. J.
The ultimate question to be decided in this case is whether the Society holds the farm devised to it subject to an enforceable obligation to use it as a home for crippled children.
In determining whether an instrument has created a private trust, the question is whether the settlor not only expressed a desire that the recipient of the property use it in a certain way but whether he expressed an intention to impose a duty upon the recipient to so use it (i. e., whether the language used was not only precatory in character but mandatory). 1 Restatement of the Law, Trusts (2d), 69, Section 25; 1 Scott, Law of Trusts (2 Ed., 1956), 193, Section 25.2. The question is the same in determining whether a charitable trust has been created. 2 Restatement of the Law, Trusts (2d), 215, Section 351, Comment (a); 4 Scott, supra, 2574, Section 351. See, e. g., Lanham v. Howell (1951), 210 Miss., 383, 49 So. (2d), 701. The question is also the same where the recipient of the property is a charitable corporation. 4 Scott, supra, 2558, Section 348.1. See, e. g., Zabel v. Stewart (1941), 153 Kan., 272, 109 P. (2d), 177.
Thus, in the instant case, we must determine whether the testator not only expressed a desire that the Society would use the farm as a home for crippled children but also expressed an intention to impose a legal obligation upon the Society to so use it. Although the question is a close one, we feel that the testator intended to do more than merely express his motive for making the gift or indicate a hope or desire as to its ultimate use.
The words “for use as a home for crippled children,” standing alone, would probably be considered as merely precatory and as not imposing any enforceable obligation. However, the following words prohibiting sale or lease are clearly mandatory, state what the testator intended should not be done with the farm, add strength to the immediately preceding words and thus tend to indicate his intention as to what should be done with the farm. This analysis leads to the conclusion that the testator intended to impose a legal duty upon the Society (1) to use the farm as a home for crippled children and (2) not to sell or lease this farm but to operate it.
*52 This conclusion is reinforced by other language in the will. Following the language as to the use of the property and the restraints upon its alienation, the following statement appears:
“In case the said The Ohio Society for Crippled Children, Inc. shall ever be dissolved, then I request that said farm be conveyed by said Society to its successors, if any, and if there be no successors that said farm be conveyed by said Society to some suitable organization for use as a Boy’s Home.”
Although these words are precatory in nature, they presuppose the existence of an enforceable obligation upon the Society to keep the property until the Society’s dissolution and indicate the testator’s belief that he had imposed a legal duty upon the Society to use the property as a home for crippled children. As further indication of this belief, the testator disposed of his residuary by giving it to “The Ohio Society for Crippled Children, the same to be used in any manner connected with the use of the farm devised to said Society by item III of the will.”
It is therefore our conclusion that the testator expressed an intention that the farm devised by item III of the will be held by the Society subject to obligations to use the farm as a home for crippled children and to operate it, and not to sell or lease it.
This court has held that, where land is devised upon condition that the devisee shall not sell it, such a restraint is void as repugnant to the devise and contrary to public policy. Anderson v. Cary (1881), 36 Ohio St., 506, 38 Am. Rep., 602. See also Hobbs v. Smith (1864), 15 Ohio St., 419. However, such a restraint on alienation of property conveyed to a trustee to be held for charitable or other public uses will usually be given effect. Perin v. Carey (1861), 65 U. S., 465, 16 L. Ed., 701; 10 American Jurisprudence, 600, Section 22; 14 Corpus Juris Secundum, 505, Section 48 (1). See Board of Education of Van Wert v. Inhabitants (1868), 18 Ohio St., 221, 98 Am. Dec., 114; Babin v. City of Ashland (1953), 160 Ohio St., 328, 345 et seq., 116 N. E. (2d), 580; Gearhart v. Richardson (1924), 109 Ohio St., 418, 142 N. E., 890.
There are two reasons for this: (1) the interest of the public in encouraging the creation and the continuation of trusts *53 for charitable or public purposes and (2) the power of a court of equity to authorize a prohibited sale where necessary for the proper accomplishment of the charitable or public purposes of the trust, thereby preventing the trust property from being completely inalienable.
Thus in Henshaw v. Flenniken (1945), 183 Tenn., 232, 238, 191 S. W. (2d), 541, 168 A. L. R., 1010, it is said in the opinion by Neil, J.:
“* * * the testator had the right to thus place a total restraint upon the right of alienation * * *. It cannot be doubted that a similar restriction in a conveyance or devise to an individual, or in trust for purposes not of a charitable nature, would be illegal. * * * But does the same rule apply to devises of property in trust for a charitable or public use? * * *
“ ‘A perpetual trust cannot be created for an individual and his heirs in succession forever; and herein a charity differs, for a trust may be established which contemplates the payment of the income of a certain fund to some charitable purpose forever. Indeed, it is always hoped, where funds are given in trust, the income to be applied to some church, almshouse, hospital, or school, that such institution will exist indefinitely, and that the donor’s bounty will be a perennial spring for generations. At the same time, it is to be observed that this rule, applied to charities, does not render any particular property inalienable; for the court can decree the sale of any trust property when an exigency arises * * *.’ ”
Also in Dickenson v. City of Anna (1923), 310 Ill., 222, 230, 141 N. E., 754, 30 A. L. R., 587, it is said in the opinion by Duncan, J.:
“A gift to a charitable use, with a direction that no part of it should at anytime be alienated, does not create a perpetuity that the law forbids, but merely a perpetuity which the law permits. * * * charities form an exceptional class in reference to the rule against restraints of alienation, and * * * conditions in restraint of alienation may be inserted in devises to charity, because it is a normal characteristic of property devoted to charitable purposes that it is inalienable.”
See also Delaware Land and Development Co. v. First and Central Presbyterian Church (1929), 16 Del. Ch., 410, 147 A., 165.
*54 Cases such as Village of Ashland v. Greiner (1898), 58 Ohio St., 67, 50 N. E., 99, and In re Copps Chapel Methodist Episcopal Church (1929), 120 Ohio St., 309, 166 N. E., 218, are not helpful in determining the validity of restraints upon alienation of property held in trust for charitable or public uses. In each of those cases, it was claimed that, because the property involved was no longer being used for the charitable or public purposes for which it had been given, there should be a reverter of such property. In neither of those cases did any interested party seek to compel use of the trust property for the trust purposes. Compare Babin v. City of Ashland, supra (160 Ohio St., 328), 345 et seq., and Miller v. Village of Broohville (1949), 152 Ohio St., 217, 223, 89 N. E. (2d), 85, where this court recognized that the public as beneficiaries of the charitable trusts there involved might have rights to compel use of the trust property for the trust purposes at least until such rights were appropriated pursuant to the power of eminent domain or modified by appropriate court proceedings.
Our conclusion is that unless and until a court of equity in appropriate proceedings gives authority to do otherwise, the Society must hold the farm devised by item III of the will subject to obligations to use it as a home for crippled children, to operate it, and not to sell or lease it.
Therefore, the judgment of the Court of Appeals is reversed and final judgment is rendered in accordance with this opinion.

Judgment reversed.

Zimmerman, Matthias, O’Neill, Griffith, Herbert and Gibson, JJ., concur.