## CIRCUIT COURT OF FAIRFAX COUNTY

Commissioner of Highways

v.

West Dulles Properties, L.L.C., et al.

March 4, 2013

Case No. CL-2012-12252

BY JUDGE R. TERRENCE NEY

These matters came before the Court on February 15, 2013, upon the Petitioner, the Commissioner of Highways' (hereinafter "VDOT"), Motion to Strike and Dismiss the objections of Respondent, West Dulles Properties, L.L.C (hereinafter "Dulles Properties").

After considering the pleadings, memoranda, and arguments of counsel, the Court took these matters under advisement. The following embodies the Court's ruling.

### Background

This condemnation case involves VDOT's partial taking on August 16, 2012, of a parcel in Chantilly, Fairfax County, Virginia, for the widening of Route 50. A Petition in Condemnation was filed in September 2012. In its Answer and Grounds of Defense, Dulles Properties objects to the amount of compensation offered by VDOT in that it does not represent just compensation and is inadequate under Virginia and federal law. Dulles Properties further objects that VDOT's acquisition leaves Dulles Properties with an uneconomic remnant, but that VDOT has not offered to acquire the entire property as is required by the Virginia Code §§ 1-219.1(G) and 25.1-417(A)(9).

Dulles Properties further objects that VDOT's current taking does not fully reflect the right of way planned to be taken in connection with the project. Neither of the parties addressed this point in their memoranda or in oral argument. As a result, the Court makes no ruling as to it.

VDOT filed a Motion to Strike and Dismiss Dulles Properties' objections, and the parties are currently before the court on that motion.

*Analysis*

A. *Standard of Review*

A motion to strike is a test of sufficiency of a defensive pleading. Va. Code § 8.01-274. A motion to strike should only be granted when, "even if the facts set up in the answer are true, [] they are not sufficient as a matter of law to constitute a bar to the action or proceeding." *Casilear v. Casilear*, 168 Va. 46, 52, 190 S.E. 314, 316 (1937). For example, a motion to strike based on a landowner's claim that a good faith offer had been not made in a condemnation case was not granted. See *Norfolk Redevel. & Hous. Auth. v. Central Radio, Inc.*, 82 Va. Cir. 240, 249 (Norfolk 2011).

B. *Condemnation and Uneconomic Remnants*

Virginia Code § 1-219.1(G) states that, "[i]f the acquisition of only part of a property would leave its owner with an uneconomic remnant, the condemnor *shall offer* to acquire the entire property for its fair market value. . . . " Emphasis added. Virginia Code § 25.1-417(A)(9) similarly states that, "if the acquisition of only part of a property would leave its owner with an uneconomic remnant, the state agency concerned shall offer to acquire the entire property." "Uneconomic remnant means a parcel of real property in which the owner is left with an interest after the partial acquisition of the owner's property and which the state agency has determined has little or no value or utility to the owner." Va. Code § 25.1-400.

VDOT argues that neither Virginia Code §§ 1-219.1(G) nor 25.1-417(A)(9) provides a mechanism for a landowner to challenge VDOT's determination that a remaining portion of land is not an "uneconomic remnant" and, as a result, there is no remedy since one is not expressly provided for in either of the statutes. *Charles v. Big Sandy R. Co.*, 142 Va. 512, 522, 129 S.E.384 (1925) ("The procedure to be followed in the condemnation of land is purely statutory."). See also, *Virginia Electric & Power Co. v. Pickett*, 197 Va. 269, 281, 89 S.E.2d 76, 84 (1955) (Whittle, J. concurring) ("Statutes conferring the power of eminent domain are to be strictly construed and the authority conferred must be carefully observed. . . . In the construction of such statutes . . . any rights claimed must be affirmatively embodied in the statute, as silence is negation. . . . "). The only remedy available in a condemnation proceeding, according to VDOT, is to allege fault with the statutory prerequisite that a *bona fide* or good faith offer to purchase the subject property from the owner be made before the condemnation proceedings are instituted. VDOT argues that the burden of proof in this matter is on the owner and that here there is no allegation that

the VDOT's offer was a product of bad faith. Therefore, the *bona fide* offer requirement has not been violated, and there is no other remedy available to Dulles Properties.

VDOT also relies on several Virginia Supreme Court decisions. None of the cases cited by the VDOT address the specific issue before this Court, namely whether or not there is a remedy available to Dulles Properties to challenge the determination by VDOT that a remaining parcel of land not subject to the condemnation proceeding is not an uneconomic remnant. In fact, the cases cited by VDOT only address the *bona fide* offer prerequisite to a condemnation proceeding.

First, VDOT points to *State Highway & Transp. Comm'r of Va. v. Herndon*, 225 Va. 380, 302 S.E.2d 55 (1983). In *Herndon*, an eminent domain case, the issues addressed by the court concerned "the adequacy of an offer to purchase land and the right of the State Highway and Transportation Commissioner to amend a certificate of deposit." *Id.* at 382, 302 S.E.2d at 56. The suit arose because the state attempted to acquire land from the decedent and entered into negotiations which were never completed. The state filed the certificate of deposit and took the land despite the fact that negotiations were never finished. The landowner never withdrew the sum of money deposited by the state or filed suit against the state. Construction was commenced and the landowner died intestate. The Commonwealth then filed the petition in condemnation. *Id.* The Virginia Supreme Court reversed the decision of the trial court, finding that the trial court erred when it found that the state made a *bona fide* but ineffectual attempt to acquire the property by purchasing it from the decedent. *Id.* ("A *bona fide* offer to purchase becomes "ineffectual," within the meaning of Code § 25-46.5, when negotiations proceed far enough to indicate an impossibility of an agreement."). Nowhere in its opinion did the court address the issue presented here.

In *Williams v. Fairfax County Redevel. & Housing Auth.*, the Fairfax County Redevelopment and Housing Authority filed a petition in condemnation for forty-five acres of land in Fairfax County. 227 Va. 309, 315 S.E.2d 202 (1984). The defendants were the fee simple owners of the land and the trustees named in the recorded deeds of trust. The trustees asserted the right to have their liens paid before the owner was compensated for the take. The original order, determining fair market value of the land and ordering payment into the court, was modified three times within twenty-one days of the first order, but the trustees received no notice of the new orders. Then a settlement was reached, the original order was vacated, and the case was dismissed. When the trustees learned about the modifications to the original order, however, they filed a motion to challenge the settlement and dismissal of the suit. The trial court denied the motion, and the trustees appealed. *Id.* On appeal, the Virginia Supreme Court focused on "when, and under what circumstances, either a condemnor, a condemnee,

or both, may obtain a dismissal of an eminent domain proceeding instituted pursuant to the provisions of the Virginia General Condemnation Act, Code § 25-46.1, et seq." *Id.* at 312, 315 S.E.2d at 203. Though answering that question, the court never addressed the issue before the Court here, or even, for that matter, what constitutes a *bona fide* offer to purchase.

VDOT also looks to *Norfolk Redevel. & Housing Auth. v. Baylor* for support. 214 Va. 1, 197 S.E.2d 335 (1973). The only issue raised in that appeal was "whether, before proceeding to condemnation, the condemnor made a *bona fide* but ineffectual effort to purchase the property in compliance with Code § 24-46.5." *Id.* at 2, 197 S.E.2d at 336. The defendant, Baylor, filed a plea in abatement which alleged that Norfolk Redevelopment and Housing Authority had not complied with the condemnation statute. The trial court sustained the plea and dismissed the petition, and the Supreme Court reversed. The Supreme Court discussed the *bona fide* offer requirement:

> The statute requires that condemnor's offer to purchase be *bona fide*, i.e., made in good faith. Such an offer need not be the full appraised value. It need not be the fair market price, for that is to be determined in the condemnation proceeding if the parties fail to agree. It need not be the figure likely to preserve the framework for further negotiations.

*Id.* at 3, 197 S.E.2d at 337 (citing *Tiller v. Norfolk & Western Ry.*, 201 Va. 222, 225, 110 S.E.2d 209, 212 (1959)).

The court never addressed the issue of a challenge to a determination that a portion of the remaining land is not an uneconomic remnant.

Finally, VDOT cites *Hamer v. School Board of the City of Chesapeake*, 240 Va. 66, 393 S.E.2d 623 (1990). "The issues on appeal concern[ed] the necessity of the taking, the burden of proof, the right to open and close final arguments, and comments of counsel during summation." *Id.* at 69, 393 S.E.2d at 625. The Supreme Court discussed the power of eminent domain and the limitations upon that power: "The power of eminent domain is an essential attribute of sovereignty which, in our system, inheres in the General Assembly. The only constitutional limitations imposed upon the power of eminent domain are contained in the just compensation clause, Va. Const., art. I, § 11." *Id.* at 70, 393 S.E.2d at 626. The Supreme Court explicitly acknowledged that the just compensation clause supersedes any statutory remedy or procedure enacted by the General Assembly.

In short, none of VDOT's authorities address the issue presented here.

More importantly, VDOT's argument ignores the genesis of inverse condemnation in Virginia. In 1919, the Virginia Supreme Court, in *Swift & Co. v. City of Newport News*, stated:

> So that when the provision of a Constitution, as ours does, forbids damage to private property and points out no remedy, and no statute affords one for the invasion of the right of property thus secured, *the provision is self-executing, and the common law, which provides a remedy for every wrong, will furnish the appropriate action for the redress of such grievance.*

105 Va. 108, 114-15, 52 S.E. 821, 824 (1906) (emphasis added).

The Virginia Supreme Court in 2008 in *Kitchens v. City of Newport News* found that Virginia Code § 8.01-187 did not constitute the exclusive remedy for plaintiffs seeking just compensation for a taking because the General Assembly, when it enacted that code provision, would have specifically stated on the face of the statute if it had intended the statutory proceeding "to supersede ordinary causes of action." 275 Va. 378, 394, 657 S.E.2d 132, 141 (2008). The court held that Article I, § 11, takings claims may be pursued by a common law action. Also see, *Hartwell v. County of Fairfax*, 83 Va. Cir. 105, 110 (Fairfax 2011) (citing *Kitchens v. City of Newport News*, 275 Va. 378, 657 S.E.2d 132 (2008)).

Based on the foregoing, it is clear that the common law provides a remedy. Although Virginia Code §§ 1-219.1(G) and 25.1-417(A)(9) do not expressly delineate a remedy to VDOT's finding that the portion of the land that is not subject to the taking is not an "uneconomic remnant," the language of these sections also does not state that there is no remedy for an alleged wrongful determination that a parcel of land is not an "uneconomic remnant." And how could they, given the constitutional protection afforded landowners? Because courts are required to apply the "plain meaning of statutes, and . . . are not free to add language, nor to ignore language contained in statutes," this Court is unable to conclude that there is no remedy available to Dulles Properties. Indeed, VDOT, in citing *Hamer*, implicitly acknowledges that the common law provides a remedy to an Article I, § 11, takings claim. 240 Va. 66, 393 S.E.2d 623 (1990) ("The only constitutional limitations imposed upon the power of eminent domain are contained in the just compensation clause, Va. Const., art. I, § 11.").

Most importantly, VDOT overlooks these words from *Marbury v. Madison*:

> The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives a injury. . . .
>
> In the 3d vol. of his commentaries, p. 23, Blackstone states two cases in which a remedy is afforded by mere operation of law.

"In all other cases," he says, "it is a general and indisputable rule, that, where there is a legal right, there is also a legal remedy by suit or action at law, whenever that right is invaded."

". . . for it is a settled and invariable principle in the laws of England, that every right, when withheld, must have a remedy, and every injury its proper redress."

*Marbury v. Madison*, 5 U.S. 137, 163 (1803) (citing Blackstone's *Commentaries*, vol. 3, p. 23).

In short, a right without a remedy is no right at all.

## Conclusion

For these reasons, the VDOT's Motion to Strike and Dismiss is denied.